UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN MARALASON,

        Plaintiff,               CIVIL ACTION NO. 15-cv-11666

   v.

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17] AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21]

Plaintiff Kathleen Maralason seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 21).  With consent of the Parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 19.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and is now ready to rule.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on October 11, 2010, alleging that she has been disabled since June 30, 2009, due to colon cancer, diabetes, high blood pressure, sleep apnea, irritable bowel syndrome (IBS),

shortness of breath, lower back pain, and high cholesterol.  (TR 118, 204-11, 251.)  The Social Security Administration denied Plaintiff's claims on March 18, 2011, and Plaintiff requested a *de novo* hearing.   (TR 118-26, 152-56.)   On January 18, 2012, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Jerome B. Blum.  (TR 75-94.)  In a February 16, 2012 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and was not entitled to benefits because she was capable of performing her past relevant work as a bank teller.  (TR 130-36.)  The Appeals Council reviewed and vacated ALJ Blum's decision on the bases that the record did not contain documentation showing that the vocational expert's (VE's) analysis was proffered to Plaintiff and her representative, the ALJ did not determine whether Plaintiff's IBS was a severe impairment or state the most work-related activities that Plaintiff could perform despite having IBS, and Plaintiff submitted new and material evidence regarding how she performed her work as a bank teller.  (TR 141-42.)  The Appeals Council remanded Plaintiff's case to an ALJ with instructions to resolve the above-cited issues by further evaluating Plaintiff's allegations and the medical evidence of record regarding IBS, giving further consideration to Plaintiff's RFC during the relevant period, and further evaluating whether Plaintiff could perform her past relevant work as a bank teller.  (TR 142.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Blum on October 16, 2013.  (TR 26-68.)  In a November 26, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work as teacher aide.  (TR 12-21.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## II.      HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 17 at 9-14), Defendant (docket no. 21 at 7-10), and the ALJ (TR 15-16, 17-20) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony.  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned will incorporate the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Opinion and Order.

## III.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff engaged in substantial gainful activity from January through June 2011, and that Plaintiff suffered from the following severe impairments:  diabetes mellitus, grade I spondylolisthesis at L4-L5, hypertension, and obesity.  (TR 14-15.)  The ALJ also determined that Plaintiff's sleep apnea, history of colon cancer, and bipolar disorder were non-severe impairments.  (TR 15-17.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 17.)  The ALJ then found that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  (TR 17-21.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work as a teacher aide.  (TR 21.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 30, 2009, through the date of the decision.  (TR 12, 21.)

## IV.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.   *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.   *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.   *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).   If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.   *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

4

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits or remanded under sentence four because (1) "the ALJ's flawed decision making process constitutes legal error;" (2) the ALJ improperly evaluated Plaintiff's IBS; (3) the ALJ failed to comply with the rules and regulations and erroneously evaluated the record in assessing Plaintiff's credibility; (4) the ALJ erred in finding that Plaintiff could perform her past relevant work and in relying upon the VE to support the same; and (5) "Plaintiff's combination of impairments along with the ALJ's flawed assessment of same prove her incapacity to work." (Docket no. 17 at 14-30.)

### 1.    The ALJ's Decision-Making Process

On February 16, 2012, ALJ Blum found that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) and that she was not disabled because she could perform her past relevant as a bank teller. (TR 133-36.) Upon remand from the Appeals Council, in the instant decision, dated November 26, 2013, ALJ Blum found that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and that she was not disabled because she could perform her past relevant work as a teacher aide. (TR 17-21.)

6

Plaintiff argues that the ALJ erred in finding that Plaintiff can now perform a greater range of exertional work than previously determined, without providing an adequate explanation for his decision. (Docket no. 17 at 14-16.) Plaintiff also argues that under the law-of-the-case doctrine, there are no exceptional circumstances that would change Plaintiff's RFC from a full range of sedentary work to a full range of light work. (*Id*. at 16-17.) Plaintiff further argues that the ALJ exceeded the scope and violated the spirit of the Appeals Council's remand order by formulating a less restrictive RFC. (*Id*. at 18.) Defendant argues that the ALJ's findings in the previous decision are irrelevant because that decision never became final, and the Court lacks jurisdiction to review it. (Docket no. 21 at 11.) Defendant also argues that, like the ALJ's first decision, the Appeals Council's remand order is not subject to this Court's judicial review. (*Id*. at 13.)

Judicial review of social security claims is governed by 42 U.S.C. § 405(g), which limits judicial review to a "final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108 (1977). Where, as here, the Appeals Council vacates and remands an ALJ's decision for further proceedings, that decision does not become a final decision. *Wireman v. Comm'r. of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003). Accordingly, ALJ Blum's December 16, 2012 decision is not final, not judicially reviewable, and not binding under principles of *res judicata*. *See id*; *see also Moore v. Comm'r of Soc. Sec.*, No. 2:14-cv-13202, 2015 WL 4936693, at *8 (E.D. Mich. Aug. 18, 2015) (Where there was never a binding prior adjudication of disability, "plaintiff's claim that the second ALJ was bound by the RFC as formulated by the first ALJ, absent a change in circumstances, is without merit.").

Plaintiff seemingly understands that ALJ Blum was not bound to his prior decision; instead, Plaintiff argues that ALJ Blum was required to explain with specificity his reasons for finding that Plaintiff's RFC increased from sedentary work in the prior decision to light work in the instant decision. (*See* docket no. 17 at 14-16.) To support this argument, Plaintiff cites to several rules and regulations for the principle that an ALJ is required to provide an adequate explanation of the bases for his decision. (*See id*.) While this is generally true, Plaintiff provides no legal basis for her assertion that an ALJ must provide specific reasons for deviating from a previously-vacated, non-binding ALJ decision. Plaintiff's argument fails with regard to this issue.

Next, as Defendant points out, the extent to which the ALJ complied with the remand order of the Appeals Council is also not reviewable by this Court under 42 U.S.C. § 405(g), as the remand order is not a final decision of the Commissioner. *See Peterson v. Comm'r of Soc. Sec.*, No. 09-11222, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010) ("Since the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.") (citations and internal quotation marks omitted). Accordingly, Plaintiff's argument that the ALJ exceeded the scope and violated the spirit of the Appeals Council's remand order will not be considered.

Lastly, Plaintiff's assertion that the law-of-the-case doctrine applies to this matter also fails. Generally, the law-of-the-case doctrine states that a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation. Although a court has the power to revisit prior decisions of its own or of a coordinate court, as a rule courts should be loathe to do so in the absence of extraordinary circumstances. Issues, once decided, should be reopened only in limited circumstances, e.g., where there is substantially different

8

evidence raised in a subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice. *Coal Resources, Inc. v. Gulf & Western Indus., Inc*., 865 F.2d 761, 766-67 (6th Cir. 1989). *See also Johns-Manville Corp. v. Guardian Indus. Corp.,* 116 F.R.D. 97, 101 (E.D. Mich 1987) (The law-of-the-case doctrine "precludes a court from re-examining an issue previously decided by itself or a higher court."). As Defendant points out, however, the doctrine applies to district court decisions, such as district court remands of final decisions, not internal, agency-level remands. (*See* docket no. 21 at 14-15 (citing cases and 2 Soc. Sec. Disab. Claims Prac. & Proc. § 19:78 (2nd ed.) ("The doctrine of 'the law of the case' holds that the Commissioner is bound on remand from a Federal Court by the scope of the court's mandate.")).) Plaintiff cites no authority for her assertion that the law-of-the-case doctrine applies to decisions or orders made at the agency level, and the Court finds none. Accordingly, Plaintiff's Motion will be denied in this regard.

### 2.    *The ALJ's Assessment of Plaintiff's IBS*

Next, Plaintiff argues that the ALJ's evaluation of Plaintiff's IBS is flawed. (Docket no. 17 at 18-20.) The focal point of Plaintiff's argument is that the ALJ's statements in the recent decision on this issue are virtually identical to those in his previous decision, except for a couple of sentences about her condition in 2013. (*Id*. at 18-19.) Plaintiff argues that this is contrary to the directive of the Appeals Council. (*Id*. at 19.) As discussed above, however, the ALJ's prior decision, the ALJ's compliance with the Appeals Council's remand order, and the substance of the ALJ's recent decision as compared to the ALJ's prior decision, are not subject to this Court's review. Accordingly, the Court will not address Plaintiff's instant argument.

Here, the ALJ found that Plaintiff's IBS was neither a severe nor a non-severe impairment. (*See* TR 15-17.) At step two of the sequential evaluation process, it is the claimant's burden to demonstrate that he suffers from a severe impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Defendant argues that any error committed by the ALJ in not finding that Plaintiff's IBS was a severe impairment at step two is harmless because the ALJ thoroughly considered Plaintiff's IBS in formulating Plaintiff's RFC. (Docket no. 21 at 17-19.) Defendant is correct. In formulating Plaintiff's RFC, the ALJ discussed Plaintiff's subjective statements that she has

been unable to work because of IBS, among other things, and that, as stated in her Appeal Report, her IBS symptoms had worsened.  (TR 17 (citing TR 251, 277).)   The ALJ also acknowledged Plaintiff's testimony regarding her IBS symptoms of abdominal cramping and frequent bowel movements and that she had two to three episodes of IBS symptomology per week.  (TR 18.)   The ALJ then pointed out that there was no medical record evidence that indicated a significant problem with IBS.  (TR 18.)   The ALJ summarized the IBS-related record evidence as follows:

> Regarding the claimant's IBS and allegations of frequent diarrhea, the record indicates some mention of diarrhea at a few office visits in 2010, but the record also indicates the claimant began taking medication for it in October 2010 (Exhibit 4F at 2).  Follow-up notes indicate no complaints of diarrhea (Exhibit 4F at 1, and Exhibit 9F).  It was not until April 2013 that the claimant complained of diarrhea again.   She reported at that time that once per week she was [experiencing] diarrhea about twelve times per day for unknown reasons (Exhibit 10F, page 13).   However, from late 2012 until early 2013 the claimant was working in a bakery as a counterperson.

(TR 18.)   The ALJ also discussed the report of consultative examiner, Ernesto Bedia, M.D., as it related to Plaintiff's IBS, which reflects Plaintiff's statements that her cramping stopped upon taking medication for her IBS and that her diarrhea reduced in frequency to "every now and then."[1]  (TR 19 (citing TR 405).)   The ALJ then pointed out that Plaintiff's IBS-related statements as reported to Dr. Bedia were consistent with the medical records, as well as the work that she was performing at that time, but they were inconsistent with her hearing testimony.  (TR 19.)   The ALJ also found it to be worth noting that Plaintiff never testified that her IBS interfered with her ability to work at the bakery.[2]  (TR 19.)   The ALJ concluded that Plaintiff's IBS, in combination with her other impairments, limited her to work at the light exertional level.  (TR

---

[1] Dr. Bedia opined that Plaintiff was capable of performing work at the medium-exertional level, and the ALJ accorded substantial weight to his opinion.  (TR 20.)

[2] Plaintiff challenges the ALJ's characterization of her hearing testimony in this manner as part of her argument that the ALJ's credibility determination is flawed.  (Docket no. 17 at 22.)  The Court will address Plaintiff's challenge below in evaluating the ALJ's credibility determination.

18.)   The ALJ bolstered this conclusion by adding that the record contains no opinions from treating or examining physicians that indicate that Plaintiff is disabled or has limitations greater than those determined in the decision.   (TR 20.)

Plaintiff argues that diarrhea can be the natural result of colon cancer and has submitted literature on the subject as exhibits to her Motion for Summary Judgment.   (Docket no. 17 at 20, 32-38.)   Plaintiff also points out that Social Security Ruling (SSR) 96-7p provides that symptoms may wax and wane, which would explain any variance in reporting.   (*Id*. at 20.)   But the ALJ did not disclaim the fact that Plaintiff experienced diarrhea; he found that the alleged severity of Plaintiff's IBS symptoms was not entirely credible, and this finding, as further discussed below, was not erroneous.   The Court finds that the ALJ thoroughly evaluated Plaintiff's IBS in formulating the RFC, and his finding that Plaintiff's IBS, in combination with her other impairments, limits Plaintiff to work performed at the light exertional level is supported by substantial evidence.   While there is evidence that tends to support Plaintiff's assertions, there is also substantial evidence supporting the ALJ's conclusion.   Therefore, this issue falls within the ALJ's zone of choice, and Plaintiff's Motion is denied with regard to this issue.   *See Mullen v. Bowen, supra.*

### 3.       The ALJ's Assessment of Plaintiff's Credibility

Next, Plaintiff asserts that the ALJ erred by failing to comply with the rules and regulations and erroneously evaluated the record in assessing Plaintiff's credibility.   (Docket no. 17 at 20-24.)   "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."   *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).   But credibility assessments are not insulated from judicial review.   Despite the deference that is due,

such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered Plaintiff's hearing testimony and written statements, and he found them to be not entirely credible. (TR 18.) In support of this determination, the ALJ stated that he found no support in the record for the alleged severity of Plaintiff's symptoms, reasoning

13

that there is no medical evidence indicating a significant problem with IBS. (TR 18.) The ALJ further reasoned that although the medical record indicates blood sugar fluctuation and "poorly-controlled" diabetes, it further indicates that Plaintiff had some difficulty getting her medication at times, and Plaintiff testified that she is aware when her blood sugar is off and can test it and take insulin if necessary. (TR 18.)

The ALJ also noted that Plaintiff engaged in work activity after the alleged onset date, including some substantial gainful activity, and that Plaintiff indicated in her function report that she initially stopped working due to a business-related layoff, not due to her alleged disability. (TR 18.) The ALJ also discussed Plaintiff's hearing testimony in this regard:

> In terms of her work at the bakery, she initially testified that she only stopped working there because it was seasonal. She then testified that she left due to feeling agitated with customers and because it was too difficult to be on her feet all day. Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable. In any event, it is worth noting that she never testified that her IBS interfered with her ability to do the counter work.

(TR 18-19.) Plaintiff argues that the ALJ's assertions cited above are belied by her hearing testimony. (Docket no. 17 at 22.) Plaintiff's hearing testimony reads as follows:

> ALJ: What was your job [at the bakery]?
> CLMT: Cashier, deli help. And it was seasonal – for the season.
> . . . .
>
> ATTY: Okay. And what caused you to leave that job?
> CLMT: I left the job because of the agitation with the customers and just agitation all around. Also, you were on your feet constantly.
> ATTY: And what problems, if any, did being on your feet constantly give you?
> CLMT: Well, just – it was tough to be on my feet all day. And I also have IBS. So I was in the bathroom quite a bit. And – and after – it just got to be a little too much.

(TR 32, 33-34.)   While the ALJ found that Plaintiff never testified that her IBS interfered with her ability to do the counter work at the bakery, the Court agrees with Plaintiff that last portion of her hearing testimony cited above could be reasonably interpreted as that her IBS caused her to be in the bathroom quite a bit while working at the bakery.   Nevertheless, where testimony is subject to interpretation, the Court will defer to that of the ALJ.   *See Walters, supra.* Furthermore, as Defendant points out, even if Plaintiff did clearly testify that she left her bakery job due to her IBS, such testimony would support the ALJ's finding that Plaintiff testified inconsistently as to why she left the bakery position.   (*See* docket no. 21 at 22.)   Plaintiff's argument fails in this regard.

In addition to the above, the ALJ also noted that medical evidence showed that Plaintiff's treatment and medication were successful in improving Plaintiff's hypertension and diabetes. (TR 19.)   He also acknowledged Plaintiff's reported medication side effects of drowsiness, dizziness, and blurred vision, but pointed out that the treatment records did not support those allegations.  (TR 19.)  Also, as previously discussed, the ALJ noted that Plaintiff's statements to Dr. Bedia with regard to her IBS were consistent with the medical record and her work activity, but inconsistent with her hearing testimony.  (TR 19.)  The ALJ further noted that no treating or examining physician has issued an opinion that Plaintiff is disabled or has limitations greater than those assessed in his decision.  (TR 20.)

The ALJ also discussed Plaintiff's daily activities:

The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  In fact, at one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant has reported the following daily activities: cleaning her home, walking her dog, shopping once per week for two hours at a time, and eating out once per week (Exhibit 4E).  In June 2013, the claimant hit her right leg with a weedwacker (Exhibit 10F, page 29), which is inconsistent with her earlier

report that she doesn't do any yard work (Exhibit 4E, page 3).  Further, as mentioned earlier, the record reflects work activity as a teacher aide in 2010 and 2011 as well as work at a bakery in 2012 and 2013-both after the alleged onset date.  Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities and abilities have, at least at times, been somewhat greater than the claimant has generally reported.  Lastly, the claimant testified to significant exertional limitations, but also testified that once a week she completely rearranges the furniture in her home due to mental illness suggesting greater physical ability than she has other wise [sic] alleged.

(TR 20.)

With regard to the weedwacker incident, Plaintiff points out that there is no specific information in the record regarding the incident, and her counsel argues that Plaintiff may have injured herself by unsuccessfully attempting to use the weedwacker, checking the operation of the weedwacker, or in some other innocuous way.  (Docket no. 17 at 23.)  With regard to the ALJ's statement that the side effects of Plaintiff's medications are not corroborated by her treatment records, Plaintiff attaches literature from the Pocket Guide for Prescription Drugs regarding the possible side effects of Plaintiff's medications as exhibits to her Motion for Summary Judgment, and she asserts that the lack of documentation of medication side effects in her medical records may be due to the doctor's failure to report them, the necessity to take medications regardless of side effects, or no realization of the alleged need to report.  (Docket no. 17 at 22-23, 57-64.)  As Defendant points out, however, Plaintiff's arguments sound in speculation (*see* docket no. 21 at 24), and the ALJ's consideration of those facts in assessing Plaintiff's credibility was not improper.  Plaintiff also argues that the ALJ failed to discuss each of the factors listed under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in assessing Plaintiff's credibility.  But "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis."  *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL

1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). Furthermore, the Court is not persuaded by Plaintiff's argument that the ALJ cherry-picked the evidence.

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and written statements in his decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to several examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.

### 4.    The ALJ's Step-Four Determination

At step four of the sequential evaluation process, in comparing Plaintiff's RFC with the physical and mental demands of her past relevant work as a teacher aide, the ALJ determined that Plaintiff is able to perform that work as generally performed under the Dictionary of Occupational Titles (DOT), as semi-skilled at the light exertional level. (TR 21.) Plaintiff asserts that the ALJ failed to comply with Social Security Ruling 00-4p in reaching this determination.[3] (Docket no. 17 at 26-27.) SSR 00-4p requires the following:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

---

[3] Plaintiff also argues that the ALJ failed to properly analyze and provide specific findings regarding the mental and physical demands of Plaintiff's prior work, inaccurately concluding that she could perform the same, in violation of SSR 82-62. (Docket no. 17 at 25, 26.) Plaintiff, however, does not further develop this conclusory argument. The Court is not obligated to address perfunctory arguments or develop them on Plaintiff's behalf, and it declines to do so here. *See* **Error! Main Document Only.**Bush v. Astrue, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

17

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4 (Soc. Sec. Admin. Dec. 4, 2000). Where the ALJ fails to inquire about any possible conflict between the VE's testimony and the DOT, "the courts in this circuit have generally concluded that [such a failure] is not reversible error unless a potential conflict actually exists, thereby undermining the reliability of the VE's testimony and the ALJ's ability to rely upon it." *Goulette v. Comm'r of Soc. Sec.*, No. 12-11353, 2013 WL 2371695, at *11 (E.D. Mich. May 30, 2013) (collecting cases).

Plaintiff argues that the ALJ failed to ask the VE about any discrepancies between his testimony and the DOT, and that there is, in fact, an actual conflict because the DOT number provided by the VE for the teacher aide position is inaccurate. (Docket no. 17 at 26-27.) Defendant concedes that the ALJ did not ask the VE whether his testimony was consistent with the DOT and that the VE identified the incorrect DOT number for the teacher aide position, because DOT #299.367-074 does not exist. (Docket no. 21 at 25, 26.) Defendant then asserts that it is readily apparent that the VE was referring to DOT #249.367-074 in describing Plaintiff's past relevant work as a teacher aide, and merely transposed one of the numbers in doing so. (*Id*. at 26.) Defendant expounds that the requirements of the teacher aide position under DOT #249.367-074 are consistent with the VE's testimony, so no actual conflict exists, and remand is not warranted based on the ALJ's failure to question the VE about any inconsistencies with the DOT. (*Id*. at 26-27.)

According to the hearing transcript, the VE testified that Plaintiff's past relevant work as a teacher aide was classified as semi-skilled with a specific vocational preparation (SVP) level of

3 at the light exertional level "*per the DOT*," but at the medium exertional level as previously performed by Plaintiff.   (TR 58 (emphasis added).)   Through his own testimony, the VE identified any inconsistencies between his classifications of Plaintiff's work as a teacher aide as actually performed by Plaintiff and as generally performed under the DOT.   Thus, any question by the ALJ to the VE regarding inconsistencies between his testimony and the DOT would have been redundant.   On this basis alone, the ALJ's failure to affirmatively ask such a question is harmless.

It is also harmless because there is no actual conflict between the VE's testimony and the DOT.   As both parties indicate, the VE recited a non-existent DOT number for Plaintiff's past relevant work as a teacher aide.   (*See* TR 62.)   A simple consultation of the DOT, however, reveals two codes for the teacher aide position:   (1) 099.327-010 – Teacher Aide I, which requires an SVP level of six and is performed at the light exertional level, and is the DOT code under which the VE classified Plaintiff's past relevant work as a paraprofessional; and (2) 249.367-074 – Teacher Aide II, which requires an SVP level of three and is performed at the light exertional level.   The requirements of DOT #249.367-074 are consistent with the VE's testimony regarding Plaintiff's past relevant work as a teacher aide.   Thus, the Court agrees with Defendant that it is readily apparent that the VE inadvertently transposed a number in providing the DOT number for Plaintiff's past relevant work as a teacher aide to the ALJ; the VE was in fact referring to DOT #249.367-074, not 299.367-074.   The VE's technical error does not constitute an actual conflict where the VE's testimony and the DOT are substantively consistent. Accordingly, the ALJ's failure to ask the VE if his testimony was consistent with the DOT in accordance with SSR 00-4p, is harmless.

Here, the ALJ determined that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (TR 17.) The VE testified that Plaintiff's past relevant work as a teacher aide was classified as semi-skilled with an SVP of 3 and was performed at the light exertional level "per the DOT," but at the medium exertional level by Plaintiff. (TR 58.) In reliance on the VE's testimony, and in light of Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing her past relevant work as a teacher aide as generally performed under the DOT at the light exertional level. (TR 21.) And the VE testified that there are a significant number of jobs of this nature in the economy that Plaintiff can perform. Accordingly, the ALJ's step-four determination is supported by substantial evidence.

5.     *The ALJ's Assessment of Plaintiff's Combination of Impairments*

Plaintiff argues that her "combination of impairments along with the ALJ's flawed assessment of [the] same prove her incapacity to work." (Docket no. 17 at 27-30.) In assessing the limitations caused by Plaintiff's combination of impairments, the ALJ relied upon the opinion of Ernesto Bedia, M.D., the only medical opinion in the record other than that of the physician employed by the State Disability Determination Services. (TR 19-20.) On December 1, 2011, Dr. Bedia performed a consultative examination of Plaintiff with regard to her alleged disability. (TR 405-424.) Dr. Bedia evaluated Plaintiff's subjective complaints and her impairments of colon cancer, diabetes, high blood pressure, IBS, back pain, and sleep apnea as they related to her obesity, and he found that Plaintiff was capable of performing work at the medium exertional level. The ALJ accorded Dr. Bedia's opinion significant weight, but limited Plaintiff's RFC to light work rather than medium work based on the additional record evidence submitted since the date of the consultative examination.[4] (TR 20.)

---

[4] Notably, Plaintiff does not challenge the ALJ's assessment of Dr. Bedia's opinion.

In assessing the additional record evidence, the ALJ considered the subjective statements that Plaintiff made in her Appeal Report and in her recent hearing testimony.  (TR 17-18.)  The ALJ noted that Plaintiff worked part time at a bakery from October 2012 to February 2013 and that she was actively seeking employment in April and May 2013.  (TR 14, 16.)  He also evaluated Plaintiff's newly-asserted mental impairment of bipolar disorder, specifically noting that Plaintiff only sought mental health treatment after a domestic altercation in which she grabbed a knife with the intention of fully destroying a couch after her daughter's dog chewed it. (TR 15-16.)  The ALJ pointed out that Plaintiff's mental health records revealed that her bipolar disorder was well controlled with medication, she had no inability to form relationships, and she was not considered to be a danger to herself or others.  (TR 16.)  The ALJ found that Plaintiff's mental impairment caused only a mild limitation in Plaintiff's social functioning, and he advised that Plaintiff's RFC reflects this limitation.  (TR 15, 16-17.)

The ALJ also pointed out that Plaintiff did not complain of diarrhea again until April 2013, when she reported that she was experiencing it about twelve times per day, one day per week, for unknown reasons. (TR 18.)  He also noted that the more recent evidence showed that Plaintiff's treatment and medication had been successful in treating her hypertension and diabetes.  (TR 19.)  Furthermore, the ALJ acknowledged that Plaintiff weighed 238 pounds in May 2013 (four pounds more than she did at the consultative examination (*compare* TR 19 *with* TR 424)), and he found that Plaintiff's combination of impairments was likely affected by her excess weight and limited Plaintiff to an RFC of light exertional work.  (TR 18, 19.)

Here, the ALJ properly relied on Dr. Bedia's opinion regarding Plaintiff's functional limitations resulting from all of Plaintiff's alleged impairments, except for her bipolar disorder. The ALJ then thoroughly evaluated the record evidence generated after the date of Dr. Bedia's

opinion, and he further limited Plaintiff's RFC accordingly.   Notably, other than complete disability, Plaintiff fails to identify any limitations that the ALJ should have imposed as a result of her combined impairments.   And as the ALJ notes, the record does not contain any opinions from treating or examining physicians indicating that Plaintiff has any limitations greater than those assessed by the ALJ in his decision.  (TR 20.)  For the reasons discussed herein, the Court finds that the ALJ properly considered Plaintiff's combination of impairments and will deny Plaintiff's Motion with regard to this issue.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [17] is **DENIED**, and Defendant's Motion for Summary Judgment [21] is **GRANTED**.

Dated:  September 28, 2016          s/ Mona K. Majzoub__
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon counsel of record on this date.

Dated:  September 28, 2016          s/ Lisa C. Bartlett_____
                                    Case Manager